UNITED STATES of America ex rel. TENNESSEE VALLEY AUTHORITY and Tennessee Valley Authority, Plaintiffs,

v.

Robert F. MILLSAPS, et al., Defendants.

No. B–C–86–282.

United States District Court, W.D. North Carolina, Bryson City Division.

Feb. 4, 1988.

James E. Fox, Associate Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Harriet A. Cooper, Thomas C. Doolan, Trial Attys., Tennessee Valley Authority, Knoxville, Tenn., for plaintiffs.

T. Harold Pinkley, Paine, Swiney & Tarwater, Knoxville, Tenn., for defendants.

## MEMORANDUM OF DECISION

### WOODROW WILSON JONES,
District Judge.

This civil action was brought by the Plaintiffs, United States of America and Tennessee Valley Authority seeking injunctive relief to restrain the Defendants from trespassing on lands of the United States, and to require them to comply with Section 26a of the TVA Act, 16 U.S.C. Section 831y–1 (1982), and TVA's regulations, 18 C.F.R. §§ 1304.200 to 1304.206 (1987). After the Defendants filed their answer the parties agreed upon certain facts and filed with the Court on September 23, 1987 "Stipulations of Fact." Thereafter the Plaintiffs moved for summary judgment and the motion was scheduled for hearing in Bryson City, North Carolina on January 25, 1988. Prior to the scheduled hearing date the parties waived a hearing on the motion and agreed that the Court could decide the motion upon the pleadings, stipulations of fact and briefs of the parties. The Court now enters its findings and conclusions.

## FINDINGS OF FACT

1. The Defendants to this action, all of whom own houseboats moored by deep anchor to the bed of the Eagle Creek Embayment of Fontana Reservoir are as follows:

*Charles Lee Bryant* owns houseboat 3–F–473 which boat was acquired from Hughla J. Bryant, who, in turn, obtained title from Lloyd Bryant.

*Carl Dockery* owns houseboat 3–F–543.

*R.F. Woods* owns houseboat 3–F–547.

*Donald D. Phillips* owns houseboat 3–F–548 which he acquired from Perry P. Paine, Jr. and William Felknor.

*Perry P. Paine, Jr.* and *Richard Taylor* jointly own houseboat 3–F–549, which was acquired from James Duckett, who in turn acquired it from Henderson Walker.

*Robert F. Millsaps* owns houseboat 3–F–550.

*John Crisp* owns houseboat 3–F–551 having acquired Glenn Fox's interest in said boat.

*Herbert P. Melton* owns houseboat 3–F–552, having acquired said boat from Guy Fox.

2. The land to which the Defendants' houseboats are moored is owned in fee simple by the United States of America. The United States owns fee simple title to all lands within the Eagle Creek Embayment of Fontana Reservoir and to all the shoreline of that embayment, by virtue of a September 1944 warranty deed attached as exhibit B to the complaint, a May 12, 1944

grant of a flowage easement, attached as exhibit C to the complaint, a March 31, 1948 transfer agreement attached as exhibit E to the complaint, and a June 7, 1983 warranty deed attached as exhibit D to the complaint.

3. The Park Service of the United States Department of the Interior (Park Service) has custody of that portion of the Eagle Creek Embayment which is within the boundaries of the 1983 conveyance, subject to a flowage easement entrusted to the Tennessee Valley Authority (TVA). The remainder of the land within the Eagle Creek Embayment below the 1,700–foot contour elevation is in the custody of TVA by virtue of the 1944 deed.

4. Park Service has custody of all of the property adjoining the Eagle Creek Embayment above the 1,710–foot contour elevation, as part of the Great Smoky Mountains National Park, by virtue of the 1948 transfer agreement and the 1983 conveyance.

5. Neither the United States, TVA, nor the Park Service has granted the Defendants permission to moor their houseboats to land owned by the United States.

6. Pursuant to Section 26a of the TVA Act, 16 U.S.C. Section 831y–1 (1982), in 1971 the TVA promulgated regulations pertaining to structures in the Tennessee River and its tributaries, including Fontana Reservoir. On August 14, 1971, TVA caused a notice of proposed rulemaking to be published in the *Federal Register* concerning approval of construction and structures in the Tennessee River system. Among other things, the proposed regulation provided that the mooring locations of nonnavigable houseboats must be approved by TVA, and that "if the proposed mooring location is outside the designated harbor limits of a commercial boat dock, the application and plans shall be accompanied by evidence satisfactory to TVA showing that the applicant is ... the owner or lessee of the abutting property at the proposed mooring location, or the licensee of such owner or lessee." [§ 1304.205(c)]. Public comment was requested on the proposed regulation.

7. By letter of September 9, 1971, some of the Defendants, or their predecessors in interest, submitted comments to TVA on the proposed regulation, and the proposed regulation was revised in some respects and promulgated in final form on October 22, 1971, with an effective date of July 1, 1972. During 1972, Defendants or their predecessors in interest submitted applications to TVA for its approval pursuant to Section 26a of the TVA Act, 16 U.S.C. Section 831y–1, of their proposed houseboat mooring locations on the Eagle Creek Embayment of Fontana Reservoir. The Defendants proposed to moor their houseboats to property then owned by Cities Service Company, and on August 1, 1972 they obtained written licenses from said company to moor their houseboats to its property. TVA conditionally approved the Defendants' proposed mooring locations.

8. On May 6, 1976, pursuant to the terms of the licenses granted to the Defendants, Cities Service Company gave notice that it would terminate the licenses effective June 9, 1976. Then on June 11, 1976, TVA notified the Defendants, or their predecessors in interest, that their houseboats were moored in violation of TVA's regulations, and requested that they be moored at an approved location. The Defendants sought and obtained several extensions of time to bring their moorings into compliance with TVA's regulations, pending their negotiations with Cities Service Company for renewal of their licenses.

9. On September 15, 1977, TVA caused a notice of proposed rulemaking to be published in the *Federal Register*, which requested public comment on proposed amendments to TVA's regulations governing structures in the Tennessee River system. The proposed amendments provided, among other things, that no new nonnavigable houseboats shall be installed in any TVA reservoirs, and that houseboats installed before January 1, 1978, shall be moored:

(1) To mooring facilities provided by a commercial dock operator within the designated harbor limits of his dock, or

(2) To the bank of the reservoir outside the designated harbor limits of commercial boat docks, if the houseboat owner is the owner or lessee of the abutting property at the mooring location (or the licensee of such owner or lessee) and has requested and obtained from TVA, pursuant to § 1304.205, written approval authorizing mooring at such location.

TVA received no comments on the proposed amendments, which were promulgated in final form on December 30, 1977, and had an effective date of February 15, 1978.

10. By letter dated February 15, 1979, Cities Service Company granted the Defendants or their predecessors in interest another written license to moor their houseboats to its property. The license was expressly subject to revocation for any reason upon at least 10 days written notice. On April 21, 1983, Cities Service Company notified the Defendants or their predecessors in interest that the license would be cancelled in 30 days because the company had contracted to sell its land to the United States, and that "the United States requires possession of the property free of said mooring permits."

11. On June 7, 1983, Cities Service Company conveyed its fee simple interest in land in and adjoining Fontana Reservoir to the United States. The Park Service obtained custody of said property for inclusion in the Great Smoky Mountains National Park. On June 23, 1983, the Park Service notified TVA that "there are no permits issued by the National Park Service for the mooring of boat houses, houseboats or other watercraft to Park property adjacent to the lake. We do not intend to grant any permission in the future for such use on Park lands."

12. By letter of September 8, 1983, TVA notified the Defendants or their predecessors in interest that their houseboats were moored in violation of TVA's regulations, and requested Defendants to comply with the regulations by November 1, 1983. By letter of October 28, 1983, Defendants requested an extension of time to moor their houseboats in compliance with the regulations. TVA granted the requested extension to January 2, 1984. By letter of December 27, 1983, the Defendants again requested an extension of time to work out arrangements for relocating their houseboats in compliance with TVA's regulations. TVA granted the requested extension to July 31, 1984. By subsequent letters and telephone conversations, Defendants have requested and were granted several additional extensions of time to comply with TVA's regulations, based upon their representations that they were negotiating with various persons and entities to obtain permission to moor their houseboats at approved locations. The Defendants were given until December 1, 1985, to moor their houseboats in compliance with TVA's regulations or to remove them from Fontana Reservoir. None of the houseboats are presently moored at an approved location in compliance with TVA's regulations, and none of the houseboats have been removed from the lake.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this cause and the parties under 28 U.S.C. Sections 1331, 1337 and 1345, and 16 U.S.C. Section 831y–1.

After a careful reading of the pleadings, stipulations of fact and briefs filed by the parties the Court concludes that there is no genuine issue as to any material fact and the Plaintiffs are entitled to a judgment as a matter of law under the provisions of Rule 56, Federal Rules of Civil Procedure.

The Defendants deny that their houseboats are moored in violation of 16 U.S.C. Section 831y–1 or the regulations promulgated under the Act; that their actions constitute a trespass upon the lands of the United States or that their houseboats constitute an obstruction under the Act. In addition they deny that the regulations were validly adopted and contend that the failure of the Plaintiffs to allow them to maintain their houseboats in the present location or allow them to move them to another suitable location is unreasonable, arbitrary and capricious. The Court finds these contentions to be without merit.

Section 26a of the TVA Act, 16 U.S.C. Section 831y-1 provides in pertinent part as follows:

The unified development and regulation of the Tennessee River system requires that no dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along or in the said river or any of its tributaries until plans for such construction, operation, and maintenance shall have been submitted to and approved by the [TVA] Board; and the construction, commencement of construction, operation, or maintenance of such structures without such approval is hereby prohibited. When such plans shall have been approved, deviation therefrom either before or after completion of such structures is prohibited unless the modification of such plans has previously been submitted to and approved by the Board.

\*   \*   \*   \*   \*   \*

Such construction, commencement of construction, operation, or maintenance of any structures or parts thereof in violation of the provisions of this section may be prevented, and the removal or discontinuation thereof required by the injunction or order of any district court exercising jurisdiction in any district in which such structures or parts thereof may be situated, and the Corporation is hereby authorized to bring appropriate proceedings to this end.

This Act of Congress confers upon the TVA the power, duty and responsibility to develop and regulate the Tennessee River system. It provides that no *dam, appurtenant works, or other obstruction* affecting navigation, flood control, or public lands or reservations shall be constructed and thereafter operated or maintained across, along, or in the said river or any of its tributaries until the plans of such use are approved by the Board.

Pursuant to the Act, TVA promulgated regulations governing the permanent mooring of floating structures such as houseboats on the Tennessee River and its tributaries. While the Defendants admit that their houseboats are not moored in compliance with TVA's regulations they contend that the regulations exceed the scope of Section 26a of the TVA Act and are invalid and further that the regulations were not properly adopted. The Defendants offer no legal authority to support these contentions, but merely offer the bald assertion that their nonnavigable houseboats permanently moored to the bed of Fontana Reservoir do not "obstruct" anything and that Congress could not have intended to authorize TVA to prohibit this kind of an alleged obstruction.

In the recent case of *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984), the Supreme Court explained in detail the manner in which courts should resolve issues about compliance of regulations with statutes they implement. The Court stated that the first inquiry should be whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter. If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's regulation or interpretation is based on a permissible construction of the statute.

█ If Congress leaves a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such agency regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

Of course Congress did not directly decree that a nonnavigable houseboat on Fontana Reservoir would constitute an "obstruction" in the development of the Tennessee River system. However, the debate in the Senate on Section 26a reveals that Congress intended the language to apply to any type of structure or improvement in the Tennessee River system and that the TVA Board was specifically given the authority to make such determination. See (95 Congressional Record 7506) (1935).

■ It therefore follows that TVA's regulations governing the approval of structures and facilities which can be moored in the Tennessee River and its tributaries as set forth as [18 C.F.R. § 1304.200 (1987)] are consistent with the TVA Act. These regulations were designed to serve the broad purposes of Section 26a:

> This subpart prescribes regulations governing designation of harbor areas at commercial boat docks and the approval of structures and facilities which can be moored or installed in such areas and in other areas in the Tennessee River and its tributaries, all in such a manner as to avoid obstruction of or interference with navigation and flood control, avoid or minimize adverse effects on public lands and reservations, prevent the preemption of public waters by houseboats moored in permanent or semipermanent locations outside such harbors [at commercial boat docks] and used as floating dwellings, attain the widest range of beneficial uses of land and land rights owned by the United States of America, enhance reasonable recreational use of TVA reservoirs by all segments of the general public, protect lands and land rights owned by the United States alongside and subjacent to TVA reservoirs from trespass and other unlawful or unreasonable uses, and maintain, protect, and enhance the quality of the human environment.

Such a regulation is plainly a reasonable exercise of TVA's authority. The fallacy of Defendants' claim that their nonnavigable houseboats do not "obstruct" anything in the Tennessee River becomes apparent when carried to its ultimate conclusion. Obviously, if the public were free, as the claim suggests, to place nonnavigable houseboats at will on the surface of the River and the Fontana Reservoir, a great many things would be obstructed, including navigation, flood control and the public's use of the river generally. Unmoored, these nonnavigable floating structures would pose a hazard to the safety of the public using the waters, and would impede or prevent that use. If moored to the beds of the reservoir or the river, these structures would present similar dangers and would preempt the other public uses of the waters of the lake or river. Even one houseboat permanently moored to federally owned land interferes with the Government ownership rights, and prevents the Government and the public from using that land and water for any other purpose. The Court therefore finds and concludes that it was reasonable for TVA to conclude that nonnavigable houseboats in the Tennessee River and its tributaries must be moored either to the banks of the reservoirs, so long as the landowner agreed, or in commercial boat docks. The Court concludes that the regulation is both reasonable and consistent with Section 26a.

Based upon the stipulations of fact, and upon the Defendants' failure to present any evidence to the contrary, the Court concludes that the regulations were properly adopted and are valid.

■ The Defendants concede that their houseboats are moored to the bed of Fontana Reservoir in violation of the regulations but contend that it is arbitrary and capricious for TVA not to allow them to keep their boats at their present locations. They contend that it would be a simple matter for TVA to designate their present mooring location as a "dock." To give the Defendants such special treatment and declare their mooring spot a "commercial boat dock" just so they could keep their boats there might very well be arbitrary and capricious.

■ The United States, TVA and the Park Service all object to the Defendants' use of federal property for their private use and have decided not to permit the mooring of nonnavigable houseboats to the bed of the Eagle Creek Embayment of Fontana Reservoir, or to its banks, which are a part of the Great Smoky Mountains National Park by the Defendants or anyone else. The Federal Government has the right to make this decision and the Defendants have no right to continue to moor their houseboats to federal property without the permission of the Federal Government.

The TVA has gone the extra mile with the Defendants. After the adoption of the

**226**

regulations the Defendants requested and were granted permission to keep their boats there until they could make arrangements to move them. The months turned into years and the Government has been forced to bring an expensive lawsuit to get the boats removed. It is high time to put this issue to rest and to move the boats.

The Defendants' defenses are without merit and the Plaintiffs are entitled to the relief demanded. A judgment will be entered simultaneously herewith granting the requested relief.